**CONSOLIDATED UNDERWRITERS v. SEALE et al. (No. 759.) \***

(Court of Civil Appeals of Texas. Beaumont. Jan. 17, 1922. Rehearing Denied Feb. 15, 1922.)

**1. Master and servant ⚖⇒398—Notice of compensable injury may be waived for "good cause."**

The statutory notice of injury to be given under the Workmen's Compensation Act, pt. 2, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43) must be given before any proceeding for compensation can be maintained, except that in meritorious cases for "good cause" it may be waived, and all that should be required of an injured employé is that he prosecute his claim with that degree of diligence that an ordinary man situated as he is would exercise under the same or similar circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Cause.]

---

**2. Master and servant ☞417(7)—Good cause for failure to give notice of compensable injury held for jury.**

Whether good cause existed excusing injured employé for not giving notice of his injury within 30 days after happening thereof, under Workmen's Compensation Act, pt. 2, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43), *held* for the jury.

Appeal from Tyler County Court; Grover C. Lowe, Judge.

Proceeding by L. J. Seale under the Workmen's Compensation Act to obtain compensation for personal injuries, opposed by the Lodwick Lumber Company, the employer, and the Consolidated Underwriters, insurance carrier. There was an award of compensation, and the insurance carrier appeals. Affirmed.

C. A. Lord, of Beaumont, for appellant.
J. E. Wheat, of Woodville, for appellees.

WALKER, J. This is an appeal from a judgment of the county court of Tyler county, awarding compensation to L. J. Seale, appellee, under the provisions of the Texas Workmen's Compensation Act, as amended in 1917. Seale was injured on the 28th day of May, 1920, while in the due course of his employment with the Lodwick Lumber Company. This company was a subscriber under the Workmen's Compensation Act, carrying its indemnity insurance with appellant. The only question raised by this appeal is the sufficiency of the evidence to raise an issue of "good cause" in appellee's favor, excusing him for not giving notice of his injury to appellant or the Lodwick Lumber Company within 30 days after the happening thereof. This issue was submitted to the jury by the following question.

"Do you find from the evidence that a good cause is shown for the failure to give notice within 30 days?"

to which the jury answered: "Yes." On this issue appellee, Seale, testified as follows:

"I was scaling logs on May 28, 1920. Late in the afternoon, * * * while I was walking along by the side of a log which I was scaling, I struck my foot against a knot or projection of some kind. * * * This caused a right sharp pain at the time, but it subsided in a few minutes and I went on, finished my work, and thought no more about it for several days. It did not cause any soreness, and I paid no further attention to it; in fact, the entire matter passed out of my mind.

"But early in the morning of June 2d I woke up with a rather severe pain in that foot. * * * My foot was still hurting me when I got up. I looked at it, and it was a little red around that joint (indicating the large joint above mentioned). I put on my shoe and went to breakfast, and then walked to the train and went on to the woods with the rest of the men. * * * By the time I got to the woods I saw that I would not be able to work that day, as my foot was hurting so bad, and I waited until the first train went back to the mill, and I went in. I was still able to walk, but my foot was getting worse all the time.

"When I got back to the mill I went to see Dr. Selman, the Lodwick Lumber Company's regular doctor, and he examined my foot and asked me a good many questions about it, and particularly asked me if I had hurt my foot any way. I told him that I had not, and at that time I could not remember striking it on the knot a few days before. At that time I did not connect the condition of my foot with that injury at all.

"I stayed at the mill two days longer, and Dr. Selman treated my foot several times. Mr. Bird, the superintendent of the Lodwick Lumber Company, visited me several times and discussed my condition with me.

"On June 4th, I think it was, I discussed the matter with Dr. Selman and Mr. Bird, and we all decided that I would have to go to the hospital, as my foot was getting worse all the time and there wasn't any one at the hotel where I was staying to wait on me. * * * That day I was carried to the hospital at Beaumont, and called in Dr. Wier according to Dr. Selman's instructions, and gave him a letter Dr. Selman had written to him. Dr. Wier examined my foot, and treated it as long as I was in the hospital. I stayed there 32 days. * * * After Dr. Wier examined my foot he asked me if I had hurt my foot anywhere, and I told him that I could not remember. But during the night, the first night I was in Beaumont, I think, I felt a sharp pain strike my foot that reminded me of the incident I mentioned a while ago. It felt just like it did when I hit it against that knot. The first morning When Dr. Wier came I told him about it. * * *

"I did not give them (referring to the Lodwick Lumber Company) any formal notices but they knew as much about my trouble as I did."

On cross-examination the appellee, Seale, testified:

"I did tell Dr. Selman all the time that I had received no injury while in the employ of the Lodwick Lumber Company, and he asked me particularly about that. The only injury that I had ever received in the course of my employment and while working for this company was the slight blow which I have described in striking my foot against a knot or something on a log on the 28th of May. * * *

"No; I did not give any notice to the Lodwick Lumber Company that I had received an injury while in its employ, and I did not really think that I had received such injury, and I told the company's doctor, Dr. Selman, that I had received no injury. After it occurred to me, while I was in the hospital, on or about the 6th day of June, that I had struck this foot against the knot, I could have written to the Lodwick Lumber Company, and notified of this injury, but I did not do so. Yes; I could have gotten writing material, and I know how to write, and I could have thus given notice of the injury of which I now complain. Yes; there were telephones in the hospital, and I could have phoned the Lodwick Lumber Company, and thus given notice, but I did not

do so. I suffered considerable pain for the first two weeks in the hospital, and after that I did not suffer so much, and after that I was about the building on crutches, and I was under no disabilities, mental or physical, that would have prevented me from writing or phoning to the company, and I did not do so. The reason I did not give such notice was that I did not know it was necessary, and I did not know that there was any particular time within which notice had to be given. That is why I did not give the notice.

"After remaining in the hospital 32 days I returned to Hicksbaugh with Mr. Bird, the company's manager, and on the way home, it occurs to me, I told Mr. Bird about having stumped my foot on the log and about the dislocation of the joint, but I would not say now for sure that I told him that. I remember talking to him some about the dislocation as we went along home, but I would not want to testify that I told him or gave him any notice of the injury for which compensation is now sought. * * * If I did, that was not within 30 days after receiving the injury, but after I had been in the hospital 32 days, and I went to the hospital on the 4th of June, and I struck my foot on the log on the 28th of May.

" * * * Neither did I give the Consolidated Underwriters any notice of the injury for which I am claiming compensation at any time. On the 12th day of August, 1920, I gave written notice to the Lodwick Lumber Company that I claimed compensation for my injury, and on the same day I gave it written notice of my injury, of which I now complain. These notices were given on the printed blanks sent me by the Industrial Accident Board. I know that these are the only notices I have ever given concerning my injuries. Yes; the paper you show me, dated August 12, 1920, was signed by me. It is directed to the Lodwick Lumber Company, and it is the claim for compensation for injury. Yes; the other paper you show me is the notice of injury, dated August 12, 1920, and signed by me, and directed to the Lodwick Lumber Company. These are the notices that I have testified about."

On redirect examination the appellee Seale further testified:

"When I went to the hospital I did not know what was the cause of my trouble. Dr. Selman and Mr. Bird knew as much about my foot being sore as I did. They knew also that I was in the hospital with it. I did not write them anything about it after I found out the cause of the trouble, because I did not think it was necessary. And I thought all the time after about the first two weeks that I would be back in Hicksbaugh in a few days. I did not think it necessary to write them what they already knew."

Appellant attacks this finding of the jury by the following assignment of error, which is submitted as a proposition, to wit:

"The finding of the jury in response to special issue No. 3 as submitted by the court, to the effect that a good cause is shown for the failure to give notice of the injury for which compensation is claimed within 30 days, has no support in the evidence, and is wholly contrary to the evidence, since the evidence con- clusively shows that the defendant, L. J. Seale, was under no mental or physical disability that would have prevented him from giving notice; and because the evidence conclusively shows that there was a telephone in the hospital, and that by means of which he could have readily communicated with the subscriber and with the association, and the testimony conclusively shows that he was able to use such telephone, and that in this way the notice could have been communicated; and the evidence conclusively shows that he was able to write, and was under no disability preventing him from writing, and that means of writing were at hand, so that he could have readily communicated the notice required in writing either to the association or to the subscriber. There is nothing whatever in defendant's failure to give notice; on the contrary he testified himself that he could have telephoned the notice or he could have written the notice, and that he was not disabled in any way, mentally or physically, from giving notice by one of these means, and that the only reason why he did not give the notice was because he did not think it was necessary under the law, and that he did not know that he was required to give any notice within 30 days. It follows that the finding of the jury in response to special issue No. 3 is wholly without support in the evidence."

This issue is covered by article 5246—43, Texas Complete Statutes, which is as follows:

"Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this act shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty (30) days after the happening thereof and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of same; or, in case of death of the employé or in the event of his physical or mental incapacity within six (6) months after the death or the removal of such physical or mental incapacity. Provided that for good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

[1] This statutory notice must be given before any proceeding for compensation can be maintained except in meritorious cases for good cause it may be waived. The Legislature did not define the meaning of the term "for good cause," but left it as an issue of fact for the board, and, on appeal from its decision, for the trial courts.

[2] Appellant under its assignment of error would give this article a strict construction; that is, as appellee could have given the notice and did not, his claim is barred. But all the courts of this state give the terms of this act a liberal construction. Following these decisions and construing liberally the expression "for good cause," we think all that is required of an injured employé is that he prosecute his claim for compensation with that degree of diligence that an ordinary man, situated as he was, would have

exercised, under the same or similar circumstances; that is to say, if an ordinary man, situated as appellee was, would have given notice of his injury to the insurance company or the subscriber within 30 days after the happening thereof, then this claim was barred; but if an ordinary man, situated as appellee was would not have given such notice, this claim was not barred. We think the facts of this record raise that issue, and that it was properly submitted to the jury. Appellee did not know of the provision of the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), requiring notice to be given of his injury within 30 days after the happening thereof. Of course, he was presumed to know the law, but, in fact, he was ignorant of that duty. He had the 30 days in which to acquaint himself with the conditions of his compensation and comply therewith. For 9 days of that time he had forgotten his injury—it seemed to him so slight—and did not associate the condition of his foot therewith. When he did remember the accident, he was in the hospital, suffering severe pain, and under the care of surgeons. He was kept there 32 days. In view of these facts, it seems to us that the issue was clearly raised that appellee acted as an ordinary man would have acted under the same or similar circumstances.

These facts were reviewed by the board, and by making an award in favor of appellee they necessarily found that good cause was shown for not giving the notice within 30 days. On a trial to a jury the issue was again found in appellee's favor. After carefully reviewing the facts, we are unwilling to say that the issue of good cause was not raised. As sustaining us in this conclusion, see Indemnity Co. v. Zyloni, 212 S. W. 183; Indemnity Co. v. Dinkins, 211 S. W. 949; Home Life & Accident Co. v. Orchard, 227 S, W. 705; Home Life & Accident Co. v. Cobb, 220 S. W. 132.

Believing that no error was committed in the trial of this case, the judgment of the trial court is in all things affirmed.