**WICHITA FALLS, R. & F. W. RY. CO. v. CRAWFORD et al. (No. 587.)**

Court of Civil Appeals of Texas. Eastland.
June 7, 1929.

Rehearing Denied July 12, 1929.

Conner & McRae, G. G. Hazel, and H. E. McRae, all of Eastland, for appellant.

Grisham Bros., of Eastland, for appellees.

HICKMAN, C. J. The appeal is from a judgment in favor of appellees Mrs. N. A. Crawford and Etura Crawford against appellant for the death of W. W. Crawford, who died of injuries received on account of the alleged negligence of appellant. The suit was by Mrs. N. A. Crawford, surviving widow of W. W. Crawford, and a number of their children. Only one of the children, Etura Crawford, an unmarried daughter, was awarded any damages. The other children have not appealed, and the case before us involves only the judgment in favor of Mrs. Crawford and Etura Crawford.

W. W. Crawford was struck by the rear of a train, backing on appellant's house track between Hunt street and Clay street in the city of Ranger. Appellant maintained three tracks between these streets—the passing track on the east, the house track on the west, and the main track between the two. The house track joined the main track at a switch near the intersection of the main track with Clay street.

The case was tried before a jury on special issues. The acts of negligence found by the jury were: (1) The failure of appellant to ring the bell at the time and before the train struck deceased; (2) the failure of appellant to have an operator on the fireman's side of the engine at the time deceased was struck by the train; (3) the failure of appellant to have a brakeman on the rear of the train at the time it struck deceased; and (4) the failure of appellant to keep a lookout for pedestrians at the time and place deceased was struck by the train. Each of these acts of negligence was found to be the proximate cause of the death of the deceased.

Further findings of the jury in answer to the issues submitted in the main charge were that the place where deceased was struck was commonly used by pedestrians with the knowledge of appellant, and that the deceased, in traveling upon the place in question when struck by said train, used such care for his personal safety as a person of ordinary prudence would have used under similar circumstances. Certain special issues were submitted at the request of appellant, which will be noticed later.

Appellant's brief contains thirty-eight propositions, based upon an equal number of assignments of error. To single out these propositions and discuss them separately would unduly lengthen this opinion. We have considered each of them, and the views hereinafter expressed cover each question of law presented by the propositions.

G. J. Moore, a former employee of appellant, testified as a witness for appellees that he was familiar with the rules of the railroad company with reference to the operation of trains on the tracks where Crawford was killed. According to his testimony, the rules provided that there should be four men in attendance upon a train being operated as was the train which struck deceased; the fireman, engineer, head brakeman, and hind brakeman. The head brakeman should have been riding the back end of the cars while the train was being switched. The hind brakeman should have been at the crossing on Hunt street to protect the traffic. It was the duty of the head brakeman, in riding the back end of the cars, to keep a lookout while the switching was going on. The engineer was supposed to be working from signals received from the brakeman. The fireman was supposed to be looking for signals and ringing the bell. It was his duty to ring the bell constantly while moving the train. Appellant objected to all of this testimony on the ground that same was irrelevant, immaterial, prejudicial, and unauthorized by the pleadings, and on the further ground that it did not appear that any duty rested upon appellant to maintain the rules and regulations with reference to the operation of its train. The action of the trial court in overruling these objections and admitting the evidence is assigned as error. We overrule this assignment.

It is well settled by many decisions in this state that rules promulgated by a railroad company for the government of its employees in operating its trains are admissible as facts bearing on the question of negligence

vel non. The violation of these rules does not constitute negligence per se, as does the violation of a statute, but the rules are admissible in evidence as being in the nature of admissions by the railroad company. Galveston, H. & S. A. R. Co. v. Pingenot (Tex. Civ. App.) 142 S. W. 93; Texas Traction Co. v. Hanson (Tex. Civ. App.) 143 S. W. 214; Texas & P. R. Co. v. Hilgartner (Tex. Civ. App.) 149 S. W. 1091; Barron v. Ry. (Tex. Com. App.) 249 S. W. 825; Galveston, H. & S. A. R. Co. v. Tapley (Tex. Civ. App.) 268 S. W. 491.

By appropriate assignments and propositions, appellant challenges the sufficiency of the evidence to support the various issues submitted to the jury and above referred to. To discuss these assignments would be merely to copy into the opinion excerpts from the testimony. The appellant offered no witnesses. There was positive and direct testimony from witnesses offered by appellee in support of each of the issues submitted, and to copy this testimony into the opinion would be useless. All assignments challenging the sufficiency of the evidence to support the answers of the jury to the several issues submitted in the court's main charge are overruled.

■ It is urged at length in appellant's brief that the deceased was guilty of contributory negligence as a matter of law, and that for that reason the court erred in refusing to peremptorily instruct the jury at appellant's request to return a verdict that appellees take nothing.

This court has had occasion very recently, in the case of Fort Worth & Rio Grande Ry. Co. v. Sageser et al., 18 S.W.(2d) 246, to consider the question of contributory negligence as a matter of law. The facts of that case strongly pointed to the conclusion that the deceased exercised no care for his own safety. As indicated by the opinion in that case, we considered many authorities on the question and came to the conclusion that it was impossible to state any general rule by which the acts of an injured party may be determined to constitute negligence as a matter of law, and that it would be impossible to formulate such a rule, because there is no authority possessed with the power or knowledge to anticipate in advance what quality of human conduct should be condemned as negligent or prudent. A single act or circumstance, seemingly of no consequence when considered alone, may, when considered in connection with all the other facts and circumstances surrounding the injury, be decisive of the issue and make all of the acts constitute negligence as a matter of law, or, on the other hand, create a situation where reasonable minds could properly differ in their conclusion.

In the instant case, the facts show that the deceased frequently was upon appellant's premises; that he had formerly been an employee of appellant. The idea is not excluded that he was familiar with the appellant's rules and with the customary way of operating switch trains. He was traveling south on the occasion of the injury, and shortly before he was struck he met the train going north on the main track. This train switched onto the house track and came upon the deceased from the rear. There is no showing that he had any knowledge that the train had reversed its direction and been switched over to the other track. Viewing the situation as a whole we would not be authorized to hold, as a matter of law, that the deceased was guilty of contributory negligence. A large number of the leading authorities on this question are cited by us in the Sageser Case, and we here refer to such authorities without again citing them.

■■ An unusual situation is presented by the answers of the jury to special issues submitted by the court at the request of appellant. The first of these issues called upon the jury to answer whether the deceased looked for the approach of appellant's train just prior to the time he stepped upon the track upon or near which he was killed. The other issue was the same, except that it called for an answer as to whether deceased listened for the approach of the train. Each of these issues was answered by the jury in the affirmative. The issue of whether or not these acts constituted negligence was not requested or submitted. With reference to these issues and the answers thereto, appellant assumes two positions in its brief. It is contended in the first place that the trial court should have rendered judgment in favor of appellant, based upon the answers to these issues, and it is contended also that such answers should be set aside and disregarded because they were without any evidence to support them. The contention that judgment should have been rendered in favor of appellant upon the answers to these issues is not sustained. No greater effect could be given to the answers to these questions than that they were in conflict with the answer to the issue as to whether deceased was guilty of contributory negligence. If they were, as a matter of law, in conflict with the other answer, a mistrial should have been ordered. But, when the facts and general situation are considered, we do not think any necessary conflict exists. The deceased might have both seen and heard the train, which he undoubtedly did, just before he stepped upon the end of the ties, and still not have known that it had switched over to another track and reversed its course. It has been held by our Supreme Court that the failure of one about to go upon a railroad track to look and listen does not constitute contributory negligence, as a matter of law. Trochta v. Missouri K. & T. Ry. Co. of Texas (Tex. Com. App.) 218 S. W. 1038. For much stronger reasons

would the act of the deceased in the instant case in going upon the track not constitute contributory negligence as a matter of law. These issues submitted only evidentiary facts, and have no controlling effect.

■ The appellant is in no position to urge before this court that the answers of the jury to the special issues requested by it have no support in the evidence. It is well settled by numerous decisions that one requesting the submission of a special issue which is given cannot complain on appeal that there was no evidence supporting the jury's answer thereto. Many authorities could be cited, but the following will suffice: Poindexter v. Receivers, 101 Tex. 323, 107 S. W. 42; Freeman v. Grashel (Tex. Civ. App.) 145 S. W. 695; Fessinger v. El Paso Times Co. (Tex. Civ. App.) 154 S. W. 1171; Gosch v. Vrana (Tex. Civ. App.) 167 S. W. 757; Lake v. Jones (Tex. Civ. App.) 233 S. W. 1011; Lewis v. Pitts, (Tex. Civ. App.) 275 S. W. 473; Crowley Mercantile Co. v. Brenard Manufacturing Co. (Tex. Civ. App.) 287 S. W. 127.

■ Further, we are unable to understand how appellant would be benefited were it permitted to challenge the sufficiency of the evidence to support these findings, and were we to hold that same had no support in the evidence. The effect of such holding would be merely to set aside the answers of the jury to these particular issues and leave remaining the answers to the issues submitted in the court's main charge, in which are contained abundant support for a judgment against appellant.

■ The contention that the deceased was a trespasser upon appellant's property, and that appellant owed him no duty to maintain a brakeman on the rear of a train and a fireman in his position in the cab is against the established rule in our state. A railroad company owes the duty to any one in its pathway, even though he be a trespasser, to exercise ordinary care by keeping a reasonable lookout, and is liable for injuries resulting from a breach of its duty in this regard, unless, of course, the person injured was himself guilty of contributory negligence. Houston & T. C. R. Co. v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632; St. Louis Southwestern R. Co. v. Watts, 110 Tex. 106, 216 S. W. 391; Pecos & N. T. R. Co. v. Suitor, 110 Tex. 250, 218 S. W. 1034; Sears v. Ry. (Tex. Com. App.) 266 S. W. 400.

■ In the court's definition of proximate cause, the expression "new independent cause" was employed. Timely objection was urged to the definition on the ground that "the charge furnished no rule to guide the jury in determining what is such a new independent cause as would break the sequence therein mentioned." Responding to this objection, the court gave the following additional definition: "By independent cause is meant: Unrestricted, free from external control, not dependent on any other cause."

Appellant then timely objected to this latter definition on the ground that it was incomplete, in that it omitted that element which requires the independent cause to be one unforeseen, and on the further ground that the terms used by the court in the definition of independent cause are themselves technical and need an explanation. In support of its contention that the element of anticipation is vital in defining independent cause, appellant relies upon such cases as Fort Worth & D. C. R. Co. v. Westrup (Tex. Com. App.) 285 S. W. 1053, Seale v. Railway, 65 Tex. 274, 57 Am. Rep. 602, and Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

We incline to the view that the definition should have excluded such causes as should have reasonably been foreseen by the original wrongdoer, but we are unable to see how the failure to do so could have in any manner injured the appellant. The definition as given could have been understood by the jury as an instruction to acquit appellant of liability on account of the intervention of an independent cause which should have been reasonably foreseen by it, while, under the rules of law announced in the cited cases, appellant was entitled to such acquittance only when unforeseen independent causes intervene. If injury was calculated to result from this definition, such injury was to appellees and not to appellant. We are not advised by the objection to the definition of independent cause just which of the terms were thought to be legal or technical, and, for that reason, should themselves have been defined. The word "unrestricted" is not technical. "External control" is not technical. "Dependent on any other cause" is not technical. We are not disposed to add to the list of terms which have been declared by our courts to be technical and require further definition. To continue the process of defining words, and then defining the words contained in the definition, and then the words contained in the definition of the definition, would subvert the purpose of the statute requiring explanations and definitions of legal terms, and would lead only to confusion. We are not called on to determine whether the court's definition was in all things correct, but we do think it was correct as against the objections urged, and the assignments presenting these questions are overruled.

■ The questions remaining relate to the excessiveness of the judgment. Mrs. Crawford was awarded judgment for $3,000, and Etura Crawford, an unmarried adult daughter, for $500. The facts disclose that at the time of his death W. W. Crawford was not less than 65 years of age. He and his wife had not been living together for about two years. There was no estrangement shown to exist between them, but they had broken up housekeeping and decided to live among their married children. At the time of the injury, Mrs. Crawford was residing with a son at

Strawn and Mr. Crawford with a married daughter at Ranger. At one time he received a salary of $100 per month from the railroad company as watchman, but some time prior to his death that salary was reduced to $30 a month for janitor service, and for the last month of his life he had no salary at all. He performed services for his married daughter in and about the home, but no damages were awarded to this daughter, and his services for her need not therefore be considered. He ate at the table of his daughter and son-in-law just as a member of the family, and at different times bought something and brought to the house for use on the table. During the last two years of his life he occasionally bought clothing for his wife and unmarried daughter. The unmarried daughter was more than 21 years of age, was working in a laundry, and lived with a married sister. She was furnished her board and lodging by her sister and brother-in-law and purchased her own clothes, with the exception of occasional gifts from her father. It was agreed that the life expectancy of the deceased at the time of his death was 11.1 years. There was no evidence that the deceased had any prospects for obtaining employment in the future. When on the witness stand the first time, Mrs. Crawford and her daughter Etura were very uncertain in their statements as to the contributions made to them by the deceased during the last two years of his life, but before the case was closed they were recalled to the witness stand, and upon this question Mrs. Crawford testified that, after having reflected over it as best she could, and desiring to be fair alike to herself and the railroad company, she would state that, during the two years after she and her husband began living with their children he had contributed about $15 per month to her. Etura Crawford, after a similar reflection, estimated that during that period of time her father had contributed to her about $5 per month.

The court instructed the jury that, in arriving at the amount of damages, if any, to be awarded, they could take into consideration the age of the deceased at the time of his death, his earning capacity, if any, the pecuniary interest therein, if any, of Mrs. Crawford and her daughter, and the life expectancy of the deceased. The charge in this respect was correct. Actions for damages on account of injuries resulting in death are statutory. The statute limits recovery to actual damages. Such actual damages must be purely pecuniary, and the damages one suffers by grief or loss of society are excluded. The question which the jury had for determination was, What advantage in money could appellees reasonably expect to have received from the deceased had he lived?

In support of the amount of the judgment, appellees cite the cases of Gulf, C. & S. F. Ry. Co. v. Delaney, 22 Tex. Civ. App. 427, 55 S. W. 538; Taylor v. San Antonio Gas & Electric Co. (Tex. Civ. App.) 93 S. W. 674; Galveston H. & S. A. R. Co. v. Davis, 27 Tex. Civ. App. 279, 65 S. W. 217; International & G. N. R. Co. v. Jones (Tex. Civ. App.) 60 S. W. 978.

In the Delaney and Taylor Cases it was held that a minor was entitled to recover damages for the death of his father, even though the father and mother had been divorced and the latter awarded the custody of the minor, to whose support the father contributed nothing. These holdings were based upon a well-settled rule that the minor had the legal right to support from its father, which was a valuable right, and of which it was deprived by his death.

The Davis Case holds that the care and moral and mental training which children are entitled to receive from their father have an appreciable pecuniary value, which may be considered by a jury in estimating the damages sustained by such children on account of the death of their father.

These cases are of no particular value in disposing of the instant case, for the reason that the facts do not make them applicable, and for the further reason that no such elements of damages were submitted to the jury by the court, and appellees did not object to the court's charge.

The Jones Case, supra, cited by appellees, is, to our minds, an authority contrary to their contention. In that case the wife recovered judgment for $1,500 on account of the death of her husband, who was shown to have no earning capacity or business judgment, and the appellate court required a remittitur of $1,000 of that amount as a condition of affirmance.

If the deceased, over the two-year period before his death, during a portion of which time he was earning $100 a month, contributed only $15 a month to his wife and $5 a month to his daughter, it is unreasonable to suppose, in the absence of any evidence on the subject, that in the future he would or could contribute more than that amount. At the time of his death he was without employment. As noted, some time prior to his death his wages had been reduced to $30 a month for janitor services. His admitted expectancy was 11.1 years. At the highest estimation of past contributions made by the wife and daughter, and assuming that such contributions would continue during his entire expectancy, such contributions to his wife would amount to less than $2,000 and to his daughter less than $700. Allowance must be made for the present worth of those contributions, if paid now in cash, and, in allowing the present worth, it must be assumed that he would obtain other employment and earn wages, as to which subject there was no evidence. We are therefore unwilling to permit a judgment for $3,000 in favor of the widow to stand.

It is therefore our order that if, within the time allowed by law for the filing of a mo-

tion for rehearing, the appellee Mrs. N. A. Crawford shall file in this court a remittitur of all the judgment in her favor in excess of $1,500, the judgment of the trial court will be affirmed. Otherwise such judgment will be reversed, and the cause remanded.