## TEXAS EMPLOYERS' INS. ASS'N v. CLARK. (No. 614.)

Court of Civil Appeals of Texas. Eastland.
Nov. 15, 1929.

Rehearing Denied Jan. 17, 1930.

Harry P. Lawther, of Dallas, for appellant.

Grisham Bros., of Eastland, for appellee.

HICKMAN, C. J. This is a case under the Workmen's Compensation Law. Appellant was the insurer, Arkansas Fuel Oil Company the subscriber, and appellee the employee. Trial in the court below on an appeal from an award of the Industrial Accident Board resulted in a judgment in favor of appellee against appellant in the sum of $6,829.61 for total permanent disability. According to the pleadings of appellee and the evidence offered by him in support thereof, he received two injuries in the course of his employment. The first of these injuries was received on or about September 1, 1926, by his being struck on the left side of his neck and head and on his forehead by the broken end of a belt used in propelling machinery. The second injury was on the 26th day of May, 1927, and was similar in kind to the first, except that the lick sustained was across his back, extending from the left side across the spine and over the right shoulder. Neither of the two injuries was of sufficient seriousness to prevent appellee from continuing with his regular work until on or about July 6, 1927, when he was stricken with paralysis. No claim for compensation was filed with the Industrial Accident Board until on or about February 15, 1928. Since many of

the law questions presented on this appeal relate to the sufficiency of appellee's petition to state a good cause for his failure to give notice of injury and file a claim for compensation at an earlier date, the substance of the allegations with reference to this matter will be stated.

The first reason pleaded was that, although appellee suffered much pain and dizziness and impairment of his eyesight immediately following such injuries, still he did not believe that the injuries were serious, but believed they were temporary and would eventually clear up, and not result in any serious or permanent injury.

Another reason pleaded was that, after he was stricken with paralysis on July 6, 1927, on account of his physical and mental condition he was unable to file said notices until the time they were actually filed.

Another reason pleaded was that appellee did not know that his employer was carrying compensation insurance; facts being alleged which were deemed by him sufficient excuse for his failure to know that fact.

The case is briefed in this court on thirty-one propositions of law, based upon thirty-four assignments of error. We have endeavored to group the various propositions, and our view on each is indicated by our holdings on the questions of law discussed, although we shall not undertake to name each proposition and write on it separately.

The first law question presented arises in this manner: The original petition alleged "due notice of injury"; the first amended petition, upon which the case was tried and which was filed more than twenty days after service of notice of dissatisfaction with the award of the board, did not allege due notice, but alleged reasons for failure to give notice within the statutory time. It is therefore contended that a new cause of action was set up in the amended petition. This question was raised below by a special exception to appellee's first amended original petition. It cannot be raised in this manner. In the case of Chapman v. Head, 5 S.W.(2d) 1001 (error refused), this court had for consideration the question of whether limitation on account of a new cause of action being pleaded in an amended petition could be raised by a special demurrer to such amended petition, and we held that, in passing on a demurrer, the court could not consider any abandoned petition, but must look only to the allegations of the particular petition demurred to. We cited in that opinion in support of the holding many cases, beginning with the case of Lewis v. Alexander, 51 Tex. 578. On the authority of that holding and the cases therein cited, this contention will be overruled. We do not think it improper to add, however, that, in our opinion, no new cause of action was de-

clared upon in the amended petition in the instant case different to that asserted in the original petition.

By various propositions the question is presented as to what constitutes a good cause for failure to give notice and file a claim for compensation. The Workmen's Compensation Law, part 2 (article 8307, § 4a, Rev. St. 1925), provides that:

"Unless the association· or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before tne board."

It is not disputed that mental and physical inability to give· notice and file claim is a good cause for failure to do so. That the employee did not believe his injuries to be serious would clearly afford a good cause for not giving notice and filing claim until it was learned that they were serious. Compensation is not provided for pain and suffering, but for loss of wages, and there would arise no necessity for giving notice or filing a claim so long as the employee lost no time from his work, but believed his injuries were trivial. Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642.

The most serious question relates to whether the ignorance of the employee of the fact that his employer carried compensation insurance could be considered by the jury as a fact or circumstance bearing on the question of· good cause. The Workmen's Compensation Law, part 1 (article 8306, § 3c, Rev. St. 1925) provided:

"From and after the time of the receipt by the Industrial Accident Board of notice from any employer that the latter has become a subscriber under this law, all employees of said subscriber then and thereafter employed, shall be conclusively deemed to have notice of the fact that such subscriber has provided with the association for the payment of compensation under this law."

The contention is ably presented that this section of the statute conclusively presumes the fact with reference to knowledge against appellee, and that, therefore, his want of knowledge, if it existed, could not afford a reason for his failure to give notice and file claim. This question was considered by the Texarkana court in the case of Texas Employers' Insurance Association v. McGrady et al. (Tex. Civ. App.) 296 S. W. 920 (error dismissed), and it was there determined that the above-quoted provision was adopted in 1923 as an amendment to the then existing Workmen's Compensation Law for the purpose of protecting the employer from suits upon common-law liability, that the provision dealt only with the contract relation of the employer and employee, and that it therefore had no application to the rules and remedies of an injured employee against insurance association. We have carefully considered that opinion, and believe it is sound. On the authority thereof we hold that the fact that an employee in fact did not know that his employer was carrying compensation insurance might be considered by the jury in a suit between the employee and the insurer in determining whether the employee showed good cause for not filing a notice of injury and claim for compensation within the statutory time.

The contention that no issue on good cause for failure to file a claim for compensation should have been submitted because the appellee did not attempt to plead a good cause therefor, but only pleaded what he deemed to be a good cause for not giving notice of injury to his employer, cannot be sustained. That portion of the petition in which the various reasons are stated is preceded by this paragraph:

"Plaintiff says that he did not notify either his employer or the Industrial Accident Board at the time he received said injuries or at any time prior to July 6th, 1927, but that he had a good and sufficient cause for not· so notifying his employer and said Industrial Accident Board at an earlier date than the date upon which he did so notify said Board and employer, for the following good and sufficient reasons :"

Follow then the allegations above referred to with reference to the reasons.

There was no special exception filed to the petition pointing out specifically the contention here urged; viz. that the reasons pleaded related only to the failure to give notice to his employer and not failure to file a claim for compensation with the Industrial Accident Board. In the body of the petition wherein appellee was pleading his alleged good cause, he states, in substance, that he learned that his employer was carrying compensation insurance on or about February 15, 1928, and that he thereafter immediately caused to be filed proper notices and claims for compensation with the Industrial Accident Board. It is apparent that, by the use of the term "notice to the Industrial Accident Board," appellee was referring to claim for compensation to said board.

In the court's main charge a special issue was submitted, calling upon the jury to answer whether either or both of ap-

pellee's injuries resulted in his total incapacity. To this issue the jury answered "Yes." Appellant excepted and objected to this issue, basing its objection on the provisions of article 8306, § 12c, Rev. St. 1925, which reads as follows:

"If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury."

There was testimony to the effect that neither of the licks received by appellee was sufficient within itself to produce paralysis, but that the second lick aggravated the condition produced by the first, and paralysis resulted, not from either alone, but as the combined result of the two. The construction of the above provision insisted upon by appellant would deprive appellee of any cause of action whatever if the jury should believe that the last injury did not alone produce incapacity. Appellee had waived his cause of action for damages at common law against his employer, and to deny him compensation for incapacity resulting from injuries received in the course of his employment would be tantamount to holding that he had no remedy for the wrongs suffered. Such a holding, being unreasonable and violative of well-established principles, should be rejected, unless absolutely required by the language employed. Considering the provision in the light of the purposes of the Workmen's Compensation Law, we think it clear that, where the word "injury" is used in the quoted section, the Legislature clearly intended compensative injury, or injury for which compensation is provided under the terms of the law. No other injury was the subject of the legislation. The provision, we think, has application to such cases as where two separate injuries are received at different times, the first of which within itself entitles the employee to compensation and not to a case where neither the previous nor subsequent injury was alone compensative. For illustration: Specific compensation is provided for the loss of different members of the body. An employee, who by a previous injury had suffered the loss of certain members, later by a subsequent injury, suffers the loss of another member, resulting in total permanent incapacity. For such subsequent injury he would be entitled to the compensation provided for that particular injury only, and would not be entitled to compensation based upon total permanent incapacity, and the fact that the various allowances for particular injuries may be less than that allowed for total permanent incapacity will not be considered.

Complaint is made of the refusal of the trial court to give in charge to the jury appellant's requested charge No. 2, as follows:

"Gentlemen of the Jury: You are instructed, in answer to the special issue herein submitted to you, not to consider the answer of any of the medical witnesses to the effect that a result 'could' or 'possibly would follow' the licks or blows by the broken belt, as testified to by the plaintiff herein."

There is no bill of exceptions in the record showing any objection to any of the testimony on the ground indicated in the above charge, and no motion to disregard any particular testimony. Neither is there any statement in the brief pointing out where the objectionable language could be found in the testimony of any witness. The only statement in the brief concerning the matter is as follows:

"Statement. Defendant's requested Special Charge No. 2 was as set out in the foregoing assignment and was by the court refused. (Tr. p. 60.)"

No reference is made to the statement of facts, but merely to the transcript disclosing a refusal of the court to give the particular instruction. We are therefore unable to say that the court erred in refusing to give this charge.

At the request of the appellant the court submitted to the jury this special issue:

"If you have answered defendant's special issue No. 5 in the affirmative, then was said incapacity total or partial?" To which issue the jury answered, "Permanent."

It is here contended that the foregoing answer could not form the basis of the judgment herein rendered. With this contention we agree. The answer of the jury was not responsive to the issue, and amounts to no answer at all. If the judgment rested upon this answer, it would be our duty to reverse it, but we have decided that the issue should never have been submitted, and that the failure of the jury to make a proper answer thereto should not lead to a reversal. By special issue No. 3 of the court's main charge the jury determined that appellee's injuries resulted in total incapacity, and by the jury's answer to special issue No. 4 of the main charge it determined that the injuries would be permanent. These two issues and the answers thereto present a finding of permanent total incapacity. The only question left uncertain by the failure of the jury to answer appellant's special issue is whether such total incapacity resulted from the second blow alone or from the combination of both blows. The disability suffered (paralysis) is a single unit, and is not susceptible of being divided into two permanent partial incapacities, and there is no evidence in the record that a portion of the incapacity resulted from one blow and another portion from the other. Since both blows were received in the course of appellee's employment, and resulted in only one compensative injury, it follows that, if the

construction which we have herein given to article 8306, § 12c, Rev. St. 1925, is correct, and that article has no application to the facts of this case, it is immaterial as to whether one or both of the blows resulted in the incapacity.

By various propositions it is contended that the several answers of the jury to the issues submitted were so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong. We have given careful consideration to these propositions, but our conclusion is that the record presented to us is not one justifying the exercise by us of our power to disturb the fact findings of the jury. Many physicians of well-known ability and standing testified as witnesses for appellant that, in their opinion, appellee's paralysis did not result from the blows described by him, but the record also contains the testimony of a physician who testified as a witness for appellee whose opinion differed from that of appellant's witnesses. This presented a fact issue. However much we might be impressed by the evidence of the physicians who testified for appellant, we cannot say that their opinion was clearly right and the contrary opinion of the physician testifying for appellee was clearly wrong. That is a question of credibility and weight, of which we are not to judge. This court held in the case of Texas Indemnity Insurance Co. v. Preslar, 298 S. W. 666 (error dismissed), that a finding by the jury that sunstroke caused the death of an employee would be upheld, even though all of the expert witnesses expressed opinions to the contrary. The question of whether the blows received by appellee brought about his paralyzed condition was a fact issue for the jury's determination, and in arriving at a conclusion upon that issue the jury was not limited to expert opinions. It clearly could accept the opinion of one expert rather than the contrary opinion of many experts. To hold otherwise would be tantamount to a holding that a jury's verdict, in order to be upheld, must be in favor of the party offering the greater number of expert witnesses to testify to his contention.

With reference to the sufficiency of the evidence to support the jury's findings on the issues of reasons for appellee's failure sooner to give notice and file claim for compensation, these issues were likewise purely questions for the jury to determine upon their belief of what an ordinarily prudent person would have done under the same or similar circumstances. Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642.

Appellant also complains of the sufficiency of the evidence to support the answers of the jury to the issues submitted at its request. Having requested the submission of these issues, it cannot be heard to complain of the sufficiency of the evidence to support the jury's answers thereto. We cited many of the authorities supporting this proposition in the case of Wichita Falls, etc., Ry. Co. v. Crawford (Tex. Civ. App.) 19 S.W.(2d) 166.

We do not think it necessary to the validity of the judgment of the trial court that it should have set aside in express terms the final ruling and decision of the Industrial Accident Board. No process can be issued by the board to enforce its ruling and decision, and the satisfaction by appellant of the judgment of the trial court would be a complete bar to any right appellee could ever assert in an action to mature and enforce such award.

It is our opinion that appellant has pointed out no error of the trial court calling for a reversal of its judgment, and same is accordingly in all things affirmed.

### On Rehearing.

Since our original opinion was handed down in this case there has been published an opinion' by the Court of Civil Appeals of the Second District in the case of Zurich General Accident & Liability Ins. Co., Ltd., v. Walker, 21 S.W.(2d) 334, 340, in which was involved a construction of article 8306, § 3c, Rev. St. 1925. A writ of error has been granted by the Supreme Court in that case, and our information is that the writ was granted on the holding that "the employee was not derelict in failing to give notice to the employer of his injury until he had been given written notice by the employer that he was a subscriber." The granting of the writ raises a question as to whether the Supreme Court will approve that holding. However, we do not think the granting of the writ in that case has any particular bearing on the construction which, we gave in our original opinion of this article. We did not hold, as was held in that case, that the injured employee was not derelict in failing to give notice until he had been given written notice by the employer that the employer was a subscriber. Our holding on that point was merely that the lack of knowledge on the part of the employee that his employer was a subscriber was one of the facts which might be considered by the jury, in connection with other facts, in determining whether a good cause was shown for the employee's failure to give notice and file a claim within the statutory time.

In this case the jury determined, in answer to special issues Nos. 5 and 6 in the court's main charge, that a good cause had been shown for the failure to give notice and make application for compensation within the statutory time. The court also gave in charge to the jury certain special issues requested by the plaintiff below, appellee here. In answer to plaintiff's special issue No. 1, the jury determined that one of the reasons why plaintiff failed to give notice of his injury within the statutory time was because he did not know that his employer carried compensation insurance. In answer to plaintiff's special

issue No. 2, a like determination was made on his failure to file claim for compensation within the statutory time. By its answer to plaintiff's special issue No. 2 the jury determined that one of the reasons why plaintiff failed to give notice of his injury within the statutory time was that he thought his injuries were temporary, not serious, and would soon subside. In the next special issue the jury determined the same fact with reference to his failure to file his claim for compensation. In answer to the next two issues requested by plaintiff the jury determined that one of the reasons why plaintiff did not notify his employer of his injuries or make application to the Industrial Accident Board for compensation within the statutory time after July 7, 1927, was because he was physically and mentally incapacitated to do so. His belief that his injuries were not serious would certainly afford a good cause for not giving notice and filing his claim up to July 7th. The jury having found that he was physically and mentally incapacitated to give notice after that day would certainly afford good ground for not doing so from and after that date.

Viewing the question in this light, we do not think the case should be reversed and remanded for a new trial, even though we might be in error in our construction of the article above named, and even though the want of knowledge on the part of the employee would not, within itself, constitute a good cause for not giving notice and filing claim for compensation within the statutory time.

In appellant's brief an argument was contained to the effect that the failure of Grisham Bros., attorneys for appellee, to give notice and file claim after they were employed by appellee's wife to bring a suit for damages against appellee's employer, Arkansas Fuel Oil Company, should be imputed to appellee. We did not discuss this question in our original opinion, and it is insisted that we dispose of this argument in our opinion on rehearing. The facts are that appellee was stricken with paralysis, and, while he was in a very serious and helpless condition, his wife employed Grisham Bros., a firm of lawyers composed of R. N. Grisham and J. S. Grisham, to institute a suit for damages against the employer, stating to said attorneys that the employer did not carry compensation insurance. The attorneys were not employed to collect compensation insurance, but were employed to bring a suit for damages. We do not know what connection with, or knowledge of, this employment the appellee himself had. We know of no statute or rule of law which would charge these attorneys with the duty of making an investigation of the question of whether or not appellee's employer carried compensation insurance, and impute their failure to do so to appellee. They were not employed for that purpose, and in no sense were they his attorneys and repre-sentatives, save only as they might have had authority to bring a suit for damages on account of their employment by his wife. It would, we think, be a strange rule that would relieve an injured employee from the duty of giving notice during his incapacity, and at the same time charge him with the failure of his wife and attorney employed by her to do so. If he personally is relieved of the duty during incapacity to give notice and file a claim, he cannot be charged with the duty of doing so through his wife or through attorneys employed by her.

The motion for rehearing will be overruled.